HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MALIK WALLACE, DUANE PARTRIDGE, and ANTHONY ROGERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARTEN TRANSPORT, LTD, a Foreign Profit Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:24-cv-00872-RAJ<br><br>ORDER |

## I. INTRODUCTION

THIS MATTER comes before the Court on the Amended Notice of Removal (the "Removal Notice," Dkt. # 20) filed by Defendant Marten Transport, Ltd. ("Marten"), Plaintiffs' Renewed Motion to Remand (the "Remand Motion," Dkt. # 43), and Marten's Renewed Motion to Dismiss Plaintiffs' Second Amended Complaint (the "Motion to Dismiss," Dkt. # 42). The Court has reviewed the Removal Notice, the Remand Motion, the Motion to Dismiss, and the submissions in support of and in opposition to the foregoing, as well as the balance of the record. For the reasons set forth below, the Court **GRANTS** the Remand Motion and **DENIES AS MOOT** the Motion to Dismiss.

## II. BACKGROUND

In 2023, the Washington Equal Pay and Opportunities Act ("EPOA") was amended to require employers with 15 or more employees to disclose in "each posting for each job opening" the "wage scale or salary range" and "a general description of all of the benefits and other compensation to be offered to the hired applicant." Wash. Rev. Code (RCW) § 49.58.110(1)(a), (3). This amendment led to numerous complaints challenging purported pay transparency violations in Washington, including this case.

The operative complaint in this action (the "Second Amended Complaint," Dkt. # 18) alleges that Plaintiffs Malik Wallace, Duane Partridge and Anthony Rogers (collectively, "Plaintiffs") applied for job openings in Washington with Marten, an international transportation company, on or about November 2023 and February 2024. Dkt. # 18 ¶¶ 3–4, 11. Plaintiffs allege that the job postings for these openings disclosed "average weekly pay" of $1,675 but provided "no range of possible salaries stated," nor "any wage scale of what truck drivers earn[.]" *Id.* ¶ 11. As such, Plaintiffs allege that they "lost valuable time applying" to the positions, and were unable to "evaluate the pay for positions, negotiate that pay, and compare that pay to other available positions in the marketplace[.]" *Id.* ¶¶ 12–13.

On May 9, 2024, Plaintiff Wallace filed the complaint initiating this action in King County Superior Court; Plaintiff Wallace subsequently amended the complaint to add Plaintiff Partridge as an additional named plaintiff and class representative. Dkt. # 43 at 2–3; Dkt. # 1-2. On June 17, 2024, Marten filed a Notice of Removal to Federal Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Subsequently, on June 25, 2024, Plaintiffs filed the Second Amended Complaint, adding Plaintiff Rogers as an additional named plaintiff and class representative. Dkt. # 18. On July 9, 2024, Marten moved to dismiss the Second Amended Complaint, and two days later, Plaintiffs moved to remand the case to state court. Dkt. ## 23–24. On November 8, 2024, the Court granted Marten's motion to dismiss and denied Plaintiffs' motion to remand. Dkt. # 34. The Court vacated this order of dismissal on April 16, 2025 and stayed this case pending the Washington Supreme Court's answer to the following certified question: "What must a Plaintiff prove to be deemed a 'job applicant' within the meaning of RCW 49.58.110(4)? For example, must they prove that they are a 'bona fide' applicant?" Dkt. # 39; *see Branson v. Washington Fine Wines & Spirits, LLC*, No. 24-cv-00589-JHC, 2024 WL 4510680, at *2 (W.D. Wash. Aug. 20, 2024), *certified question accepted*, 557 P.3d 253 (Wash. 2024).

On September 4, 2025, the Washington Supreme Court issued its decision in *Branson*, and provided the following definition of "job applicant":

> A job applicant need not prove they are a "bona fide" applicant to be deemed a "job applicant." Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a "job applicant," regardless of the person's subjective intent in applying for the specific position.

*Branson v. Washington Fine Wine & Spirits, LLC*, 5 Wash. 3d 289, 305 (2025).

Marten filed the Motion to Dismiss on November 17, 2025, arguing that Plaintiffs fail to state a claim under EPOA in the Second Amended Complaint and asking the Court

to exercise jurisdiction to again dismiss the case on the merits. Dkt. # 42. Plaintiffs filed the Remand Motion a day later, arguing that remand is required because Plaintiffs lack Article III standing and Marten cannot establish federal jurisdiction under CAFA. Dkt. # 43.

## III. LEGAL STANDARD

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). In the typical case, there is a "strong presumption against removal jurisdiction" and the "court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Even so, the "rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). "The party invoking federal jurisdiction bears the burden of establishing" Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV. DISCUSSION

### A. Plaintiff Lacks Article III Standing

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016). Injury in fact is the "first and foremost of standing's three elements." *Id.* (citation modified). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

The requirement of a concrete injury to establish Article III standing applies "even in the context of a statutory violation," like claims under the EPOA. *Id.* at 341. Thus, "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id.* Statutory violations may constitute concrete injuries if they present a "risk of real harm" or "ha[ve] a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[.]" *Id.* at 340–41. To determine whether a statutory violation constitutes a concrete harm, courts in this Circuit engage in a two-part inquiry. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), *abrogated on other grounds by Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026). First, courts consider "whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)." *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)). Second, if the answer is yes, then courts "assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Robins*, 867 F.3d at 1116).

Under the first *Magadia* step, the Court finds that the EPOA's disclosure requirement was enacted to protect concrete, non-procedural interests. In making this finding, the Court agrees with several other courts in this District that the statute's disclosure requirement "was established to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate." *Spencer v. Vera Whole Health, Inc.*, 2024 WL 3276578, at *3 (W.D. Wash. July 2, 2024) (analyzing legislative history); *see also Hill v. ACV Auctions Inc.*, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025) (same); *Hill v. Hydromax USA LLC*, 2025 WL 3677481, at *3 (W.D. Wash. Dec. 18, 2025) (same).

Turning to *Magadia*'s second step, the alleged EPOA violation in this case does not actually harm, or present a material risk of harm to, the concrete interests the EPOA is

intended to protect. As numerous courts in this District have held, "unless the plaintiff was 'a bona fide applicant' for employment, an EPOA violation involving 'a job posting with no compensation information included' does not 'by itself . . . manifest concrete injury[.]'" *Davis v. Delta Air Lines, Inc.*, 2026 WL 914781, at *3 (W.D. Wash. Apr. 3, 2026) (quoting *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, 2025 WL 3062646, at *4 (W.D. Wash. Oct. 31, 2025)). This makes sense because "failing to disclose pay information cannot impact pay negotiations, time spent interviewing, or compensation for a job the plaintiff never actually intended to pursue." *Id.* "Thus, 'a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof.'" *Id.* (quoting *Les Schwab*, 2025 WL 3062646, at *4).

Plaintiffs allege that they "lost valuable time" applying for positions with Marten. *Id.* ¶ 12. However, "time lost in merely submitting an application is 'not an injury that the EPOA seeks to prevent or redress.'" *Partridge v. Heartland Express Inc. of Iowa*, 2024 WL 4164245, at *4 (W.D. Wash. Sept. 12, 2024) (quoting *Vera Whole Health*, 2024 WL 3276578, at *3). "A generalized assertion of time lost, therefore, does not support Article III standing." *Id.*; *see also Davis*, 2026 WL 914781, at *7 ("to the extent [the plaintiff] was not a bona fide applicant," time lost for applying to the position was "self-inflicted and, in any event, 'not an injury that the EPOA seeks to prevent or redress.'") (quoting *ACV Auctions*, 2025 WL 1582249, at *3).

Plaintiffs also allege that Marten's failure to disclose the wage range harmed their ability to "evaluate the pay for positions, negotiate that pay, and compare that pay to other available positions in the marketplace." Dkt. # 18 ¶ 13. However, these speculative and conclusory allegations cannot support Article III standing. The Second Amended Complaint provides no indication that Plaintiffs would have received an opportunity to interview for the position or would have had an opportunity to negotiate pay. *See generally* Dkt. # 18. The record therefore does not show that Plaintiffs suffered, or had a material risk of suffering, the type of harm envisioned by the EPOA. *See Spencer v. Total Renal*

*Care, Inc.*, 2024 WL 4834901, at *3 (W.D. Wash. Nov. 20, 2024) ("conclusory" and "boilerplate" allegations do not support Article III standing); *Spencer v. Aramsco Inc.*, 2026 WL 376942, at *3 (W.D. Wash. Feb. 11, 2026) (allegations regarding adverse effect on pay negotiations and economic harm "assume[d] without support that [the plaintiff] would have been selected for an interview and ultimately hired for this or equivalent jobs.").

In urging the Court to "exercise jurisdiction to dismiss the operative complaint on the merits," Marten asserts that "nothing substantive has transpired in this case" since the Court's original order dismissing the case and denying Plaintiffs' motion for remand. Dkt. # 46 at 2 (referencing Dkt. # 34). However, in the months following the Court's initial order, courts in this District have overwhelmingly remanded similar EPOA-based complaints for lack of Article III standing, consistent with the analysis set forth in this Order. *See Davis*, 2026 WL 914781, at *7 (collecting cases). Even after the Washington Supreme Court's answer to the certified question in *Branson*, courts in this District consistently continued to remand similar cases for lack of Article III standing. *See Hill v. Albertsons LLC*, 2026 WL 1469502, at *2 (W.D. Wash. May 26, 2026) (collecting post-*Branson* cases granting remand). In doing so, these courts have observed that "the Washington State Supreme Court's answer to Judge Chun's certified question in *Branson* does not change the Article III standing analysis" governing EPOA removal cases. *Id.*

In sum, the Court adopts the approach consistently taken by courts in this District addressing this "familiar argument from plaintiffs in EPOA removal cases," and concludes that remand is required for lack of Article III standing.[1] *See Albertsons*, 2026 WL 1469502, at *2.

---

[1] Because the Court remands for lack of Article III standing, the Court declines to reach Plaintiffs' other argument for remand, failure to establish CAFA jurisdiction.

**B. The Futility Exception Does Not Apply**

In most cases, when a district court concludes that it lacks subject matter jurisdiction over a removed action, the appropriate remedy is to remand the action to state court, rather than dismiss it outright. *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) (citing 28 U.S.C. § 1447(c)). However, a "narrow 'futility' exception to this general rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand." *Id.* (quoting *Polo*, 833 F.3d at 1197–98). Marten argues that remanding this case would be a "waste of judicial resources" because the Second Amended Complaint fails to state a claim, thus rendering remand futile. Dkt. # 46 at 13–14. However, the Court's finding that it lacks subject matter jurisdiction prevents it from assessing the merits of the Second Amended Complaint. And applicable state law undermines any argument that this action would be dismissed with "absolute certainty" in state court. "State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196. It is therefore possible that the Second Amended Complaint may proceed in state court even though Plaintiffs did not suffer an injury in fact sufficient to support Article III standing in federal court. *See Milito v. Lucid Grp. USA Inc.*, 2025 WL 3640898, at *3 (W.D. Wash. Dec. 16, 2025) (declining to apply futility exception in similar EPOA case); *Hill v. Airgas USA LLC*, No. 2025 WL 3640901, at *4 (W.D. Wash. Dec. 16, 2025*)* (same); *Davis*, 2026 WL 914781, at *8 (same). Indeed, the Washington Supreme Court's decision in *Branson* further suggests that this action may not be dismissed for lack of standing in state court. *See Branson*, 5 Wash. 3d at 305.

Accordingly, the Court cannot conclude that there is "absolute certainty" that this case will be dismissed in state court. *Polo*, 833 F.3d at 1198. The Court therefore declines to dismiss the complaint outright on the basis that remand would be futile.

## V. CONCLUSION

For the forgoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand. Dkt. # 43. The Court **DENIES AS MOOT** Marten's Motion to Dismiss. Dkt. # 42. This case is remanded to King County Superior Court.

Dated this 24th day of July, 2026.

The Honorable Richard A. Jones
United States District Judge